UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**CURTIS LAMONTE BENBERRY**                                                    **PLAINTIFF**

**v.**                              **CIVIL ACTION NO. 3:06-CV-P122-H**

**METRO CORRECTIONS DEPARTMENT et al.**                      **DEFENDANTS**

### MEMORANDUM OPINION

The plaintiff, Curtis Lamonte Benberry, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the action will be dismissed.

### I. SUMMARY OF CLAIMS

Benberry is incarcerated at Louisville Metro Department of Corrections ("Metro Corrections"). He names as defendants the "Director of Metro Corrections" and the Medical Department of Metro Corrections. He sues each defendant in his or her official capacity and requests monetary damages of $1,000,000 and punitive damages of $1,500,000. He alleges that on or about June 17, 2004, he contracted "M.R.S.A.,"[1] while incarcerated at Metro Corrections. He alleges that, after his release from Metro Corrections, he went to three different emergency rooms seeking treatment for his boils, which involved taking "numerous" antibiotics and having surgery to prevent the spread of the boils. He further states that the M.R.S.A. infection is life-long and that he contracted it because Metro Corrections and the Medical Department at Metro Corrections failed to provide proper treatment, thereby exposing him to the infection. He alleges

---

[1] The court will assume that "MRSA" is "methicillin-resistant Staphylococcus aureus." *See* www.mercksource.com.

that the defendants therefore violated his Eighth Amendment rights.

Benberry also alleges that he was incarcerated again on or about June 9, 2005, and that, at that time, he asked to see a doctor for a "sore jaw and problems [he] was having eating because of a prior altercation . . . which [had] happened a few days prior [to] coming to Metro Corrections." He states that a week later he was examined by a Metro Corrections dentist, who referred him to a surgeon. He further states that six months later he was taken to a surgeon, who told him that he had suffered a fracture of his jaw and would have to have corrective surgery because his jaw already had healed in a new position. He states that the surgeon also told him that he would have to lose a tooth, have his jaw re-broken, and wear braces. He alleges that Metro Corrections violated his constitutional rights by failing to provide transportation and proper treatment for his jaw in a timely manner.

Benberry further alleges that, for about a month preceding the filing of the complaint, he and other inmates have been subjected to contaminated water leaking from a toilet, which has caused, at times, his eyes to burn and nausea and headaches. He states that he and the other inmates "have to constantly keep mopping up the stagnant water in the bathroom and dorm area . . . which isn't [his] employment." He alleges that, by not providing effective maintenance, Metro Corrections has violated his Eighth Amendment rights.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28

U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.,* 289 F.3d 417, 424 (6th Cir. 2002). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000).

While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), a plaintiff is required to plead more than bare legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). Therefore, the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (internal quotation marks and citations omitted).

The Prison Litigation Reform Act of 1995 ("PLRA") established an administrative exhaustion requirement codified at 42 U.S.C. § 1997e(a). Section 1997e(a) provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In enacting this provision, Congress imposed a prerequisite upon prisoners seeking to bring conditions-of-confinement claims under

42 U.S.C. § 1983. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies is now mandatory, rather than discretionary. *Id.*; *Brown v. Toombs*, 139 F.3d 1102, 1103 (6th Cir. 1998). "[T]he purpose of the exhaustion requirement is to provide states the first opportunity to resolve problems themselves, [and] an inmate who has not pursued available administrative remedies may not yet proceed in federal court." *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003).

In the instant case, Benberry states that he filed numerous grievances from June 2005 until the present date regarding his claims that he was not taken to a surgeon for his jaw in a timely manner and regarding his claims about the stagnant water. He states that there was no response to his grievances except that Sergeant Ezelle did confront maintenance about the stagnant water. He states that he did not appeal with regard to his grievances to a higher official or the jailer.

Metro Corrections has an inmate grievance procedure in place. *See* Policy 11.14 (referencing 3-ALDF-3E-11, 501 KAR 3:140, Sec. 6). All inmates receive "a written copy and an oral explanation of the Grievance Procedure at Orientation." An inmate is first required to attempt to resolve a grievance informally. If the grievance is unable to be resolved informally, the inmate may submit a formal written grievance, first to the Shift Commander for review, then to the appropriate Divisional Director, next to the Lieutenant Colonel, and finally to the Chief/Director of Corrections. The grievance procedure imposes time limits for resolution at each stage of the process and allows for extensions of those time limits. Additionally, the grievance procedure provides that "[a]bsent an extension, expiration of response time limits entitles the inmate to move on to the next step in the review process." Thus, even if his initial

4

grievances were not answered, Benberry has not exhausted the grievance procedure because he did not move on to the next step in the review process. *See generally Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). "[A] prisoner does not exhaust his administrative remedies when he fails to commence the grievance process or to run the gamut of potential appeals." *Thomas*, 337 F.3d at 726-27.

Despite Benberry's failure to exhaust available administrative remedies, this court may nevertheless "dismiss the underlying claim without first requiring the exhaustion of administrative remedies" if the "claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2). This is such a case where exhaustion is not required as Benberry has failed to state a claim upon which relief may be granted.

Benberry sues each of the defendants in their official capacities. If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, Benberry's claims against the employees of Metro Corrections in their official capacities are actually brought against the Louisville Metro government. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in

other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

In the instant case, Benberry has failed to allege the existence of a governmental policy or custom relative to the nature of his complaints and claims. Because Benberry does not allege

the existence of a direct causal link between a municipal policy or custom and the alleged Eighth Amendment violation, *see Monell*, 436 U.S. at 691, he has failed to state a claim for which relief may be granted against the Louisville Metro government.  *See* § 1997e(c)(2).

The court will enter an order consistent with this memorandum opinion.

Date:

cc:     Plaintiff, *pro se*
        Jefferson County Attorney

4412.009